UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL FOSTER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>A-PARA TRANSIT CORP.,<br><br>Defendant. | Case No.18-cv-06576-JD<br><br>**ORDER RE REMAND**<br>Re: Dkt. No. 15 |

Plaintiff Darryl Foster, on behalf of himself and a putative class, alleges that defendant A-Para Transit Corp. ("Transit") did not properly pay overtime wages or provide meal and rest periods as required by California law. He originally filed this action in the California Superior Court for the County of Alameda. Transit removed the case to this Court on an allegation of federal-question subject matter jurisdiction. It asserted that Foster was subject to a collective bargaining agreement ("CBA") which completely preempted his state law claims under the Labor Management Relations Act ("LMRA"). Foster asks to remand the case to state court. Dkt. No. 15. The Court concludes that the case was removed improvidently and without jurisdiction, and remands it to the California Superior Court pursuant to 28 U.S.C. Section 1447(c).

The complaint alleges several employment law claims based on the California Labor Code, Industrial Welfare Commission Orders ("IWC"), and the Unfair Competition Law. Dkt. No. 1, Ex. A. This would typically be the end of any federal-question jurisdiction issue because the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The plaintiff is the master of his or her claim, and is perfectly free to "avoid federal jurisdiction by exclusive reliance on state law." *Id.* Consequently, if grounds for removal do not appear on the face of the complaint, it will ordinarily remain in state court.

The wrinkle in this case is that the parties agree that a CBA was in place when Foster worked at Transit, even though that does not appear on the face of the complaint. Dkt. No. 1-2, Ex. 1; *see Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1097 (N.D. Cal. 2014) (extrinsic documents may be considered in removal and remand proceedings involving complete preemption). Transit asserts federal-question jurisdiction under 28 U.S.C. Sections 1441(a), (c) and 1331 on the basis of the CBA and the contention that Section 301 of the LMRA, 29 U.S.C. § 185(a) ("Section 301") vests the district courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," regardless of the parties' citizenship or amount in controversy. *Id.*; *see also* Dkt. No. 1 ¶ 10.

Removal is tested under three basic principles: (1) the statute is strictly construed against removal; (2) the party seeking removal bears the burden of establishing that it was proper; and (3) any doubts are resolved in favor of remand. *Coria*, 63 F. Supp. 3d at 1096. Section 301 is a federal statute that has complete preemptive force. *Caterpillar*, 482 U.S. at 393-94. "'[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983)). Consequently, if "preempted under Section 301, any claim based on state law is 'considered, from its inception, a federal claim, and therefore arises under federal law.'" *Guillen v. SEIU United Serv. Workers W.*, No. 3:16-CV-04279-JD, 2017 WL 6372815, at *1 (N.D. Cal. Dec. 13, 2017) (quoting *Caterpillar*, 482 U.S. at 393). The district court must then treat it as a federal claim "for all purposes" or "dismiss it with leave to formally replead the claim under federal law." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1058 (9th Cir. 2018).

Section 301 preempts only a state-law claim that "arises entirely from or requires construction of a CBA." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018) (en banc). Determining whether this is the case involves a two-step inquiry. The Court first looks to whether the cause of action "involves rights conferred upon an employee by virtue of state law,

not by a CBA." *Dent v. NFL*, 902 F.3d 1109, 1116 (9th Cir. 2018) (quotation omitted). If the rights at issue "exist solely as a result of a CBA," then the claim is preempted. *Id*. (quotation omitted).

If the right exists in state law and outside the CBA, the Court at the second step looks to whether litigating the state law claim "requires interpretation" of a CBA; if it does, the claim is preempted. *Id*. (quotation omitted). "Interpretation" is not precisely defined but has been construed to mean more than the need for a passing reference to a CBA. *Id.* Adjudicating the claim must require resolution of an active dispute over the meaning of terms in the CBA. *Id*. Similarly, where a CBA provision is only "*potentially* relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur," the claims are not preempted. *Id.* at 1117 (quotation omitted) (emphasis in original). Merely consulting a CBA, for example, to determine if it addresses a specific issue is not interpretation to the degree necessary for preemption; nor is applying unambiguous terms in the CBA. *Id*.; *Alaska Airline*, 898 F.3d at 916 ("That a state law cause of action is conditioned on some term or condition of employment that was collectively bargained, rather than unilaterally established by the employer, does not itself create a CBA dispute."). In addition, a "purely factual inquiry" going to the conduct of employees and the employer does not turn on an interpretation of the CBA and does not trigger preemption. *Dent*, 902 F.3d at 1117 (quotation omitted).

Jurisdiction is determined on the complaint and claims as they were framed at the time of removal. *Coria*, 63 F. Supp. 3d at 1098; *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). Claims One and Two in Foster's original complaint alleged violations of the California Labor Code and IWC that guarantee California workers payment for time worked, a minimum wage, and overtime. Foster says drivers were not compensated for all hours worked, "including before checking in for their work shift, after clocking out for their work shift, and during unpaid meal periods." Dkt. 1, Ex. A ¶ 6. The complaint also alleges that Transit would "clock[] out" drivers for meal breaks they did not actually take, and "round[]" and "shav[e]" employee time at various times during the day. *Id.* ¶¶ 80-94.

Transit contends that these claims are completely preempted. Specifically, it says they are CBA, and not state-law, claims because Foster seeks to vindicate a "bargained-for benefit that exists solely as a result of the CBA." Dkt. No. 16. It relies on portions of the CBA that address how compensable time is calculated before and after trips. *See, e.g.,* Dkt. No. 1-2, Ex. 1, Art. 6, Secs. 4-5. These provisions grant rights unavailable under California law, according to Transit, because "[t]here is no statutory right to this additional 'compensable work time.'" Dkt. No. 16 at 6.

The contention is not well-taken. California law generally mandates compensation for time worked at a minimum hourly wage, and payment of overtime. *See, e.g.*, Cal. Labor Code § 218.5 (providing a right of action for unpaid wages), § 1197 (minimum wage), § 510 (overtime). Transit essentially reads the CBA as entitling drivers to pay beyond hours worked, and consequently beyond the pay owed under state law. The better reading is that the CBA specifies how work hours are to be calculated, and consequently what time is owed under state law. Indeed, the passage Transit cites states that drivers are credited with 10 to 15 minutes of "compensable work time." Dkt. No. 1-2, Ex. 1, Art. 6, Sec. 4. This credit is not provided in a vacuum, or as a bonus, but rather to compensate drivers for time spent performing essential "duties" that are part of their assignments, such as vehicle safety inspections. *Id.* The CBA specifies when "work time" starts and ends. *Id.*, Art. 6, Secs. 4-5. This indicates that the CBA merely clarifies how to implement rights conferred upon employees by virtue of state law and that form the basis of Foster's claim. *See Dent*, 902 F.3d at 1116.

Transit also suggests that the claims demand an interpretation of the CBA because its use of the terms "work," "work time," and "various pre-trip duties" is ambiguous and must be construed. Dkt. No. 16 at 6-7. But it is far from clear that those words require a degree of interpretation of the CBA that warrants preemption. Foster's claim is that Transit manipulated employee time before and after shifts, and during break times, such that drivers ended up working without being paid. That is a question of fact about Transit's policies and practices, and drivers' shifts, that may require consulting the CBA to compute hours worked and pay owed but is not mainly an interpretive issue. *See Dent*, 902 F.3d at 1117; *Burnside v. Kiewit Pac. Corp.*, 491 F.3d

4

1053, 1073-74 (9th Cir. 2007).

In Claims Three and Four, Foster alleged that Transit failed to provide drivers with meal and rest breaks, in violation of California Labor Code Section 512 and other provisions. Dkt. No. 1, Ex. A ¶¶ 97-129. This was allegedly due in part to Transit's practice of assigning drivers "too much work," including shifts they had no time to complete without skipping breaks. *See, e.g.*, *id.* ¶¶ 106-111.

Transit takes aim primarily at the meal-break claim, which it again says is grounded in the CBA. Under California law, an employee working more than five hours per day is generally entitled to a meal period of at least 30 minutes, and a second meal break if she works more than ten hours per day. Cal. Labor Code § 512(a). But these requirements do not apply to certain categories of workers, including "commercial driver[s]" who are covered by a CBA that "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." *Id.* § 512(e), (f)(2). Transit argues that because Foster is a commercial driver covered by a CBA that meets these conditions, Section 512(a) does not guarantee him these meal breaks, and his claim necessarily arises under the CBA instead. Dkt. No. 16 at 7-9. Foster disputes that the CBA qualifies for the Section 512(e) exemption and adds that, even if it did, that would not change the fact that his claim arises under California law. *See* Dkt. No. 19 at 7-8.

As the parties note, district courts in this circuit have been split on whether a meal-break claim subject to Section 512(e) triggers federal preemption under the LMRA. But recent decisions by our circuit clarify that such statutory exemptions generally do not to raise a federal question. In *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1008 (9th Cir. 2018), California hotel workers sued their employer for violating a city ordinance that set the minimum wage at $10 per hour. The ordinance also permitted employers and unions, via a valid CBA, to waive this minimum wage. The hotel and the union amended their CBA to integrate such a waiver and allow the hotel to pay its workers less than $10 per hour. The workers objected and sued the hotel in

5

state court for a violation of the minimum-wage requirement under the ordinance.

The hotel sought to remove on a complete-preemption theory under the LMRA, but our circuit court disagreed. Notwithstanding the waiver in the CBA, the circuit held that plaintiffs' rights to be paid a minimum wage "arise under state law and would exist with or without the CBA." *Id.* at 1010. "That the ordinance contains an opt-out mechanism doesn't change the fact that these rights originate outside of the CBA." *Id.* at 1011. The circuit also found that the claim would entail no more that a "'look to' the CBA to determine whether it contains a valid waiver" of the ordinance's minimum wage, and not a substantive interpretation of the CBA. *Id.* at 1013.

So too, here. Transit invokes an exemption from default state-law rights that is both permitted by state law and memorialized in the CBA. That is not enough, and the Court consequently finds that Foster's meal-break claim is based on state law. It may well be that Transit qualifies for the Section 512(e) exemption by virtue of the CBA, but that goes to the merits of whether Transit violated Foster's state-protected right to meal breaks. That right would exist "with or without the CBA," and consequently originates in state law. *McCray*, 902 F.3d at 1010; *see also Alaska Airlines*, 898 F.3d at 926-27 (evaluation of claim's merits premature in complete-preemption analysis).[1]

In addition, the Court need only "look to" the terms of the CBA to ascertain whether it contains the minimum break, pay, and arbitration provisions to qualify for a Section 512(e) exemption. Similarly, the CBA's other relevant provisions require no apparent interpretation. Transit paints the CBA's meal-break terms as a complex web that "must be analyzed to resolve" Foster's claim. Dkt. No. 16 at 8-10. It says the availability of meal breaks is dependent on drivers' manifests, client demands, scheduling routes, and bidding procedures based on seniority. *Id.* But even assuming this is true, Transit must show material ambiguity in the CBA, not merely complexity. So long as it is possible for a court to determine Foster's entitlement to meal breaks without interpreting an ambiguous section of the CBA, this complexity is immaterial. Transit

---

[1] Transit makes a similar argument concerning the overtime claim, because the statute allows certain CBAs to displace the default overtime provisions. *See* Cal. Labor Code §§ 510 (overtime), 514 (exemption). That argument is unsuccessful for the same reasons.

6

does not say which of the CBA's provisions are ambiguous, or would entitle Transit to withhold meal breaks from employees, and none of the relevant terms in the CBA are presently disputed. *See Alaska Airlines*, 898 F.3d at 927 ("[R]eliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment.").

For the rest-period claim, Transit says only that it turns on interpretation of the CBA. Dkt. No. 16 at 13-14. The CBA allows drivers to take paid 10-minute breaks every four hours. While drivers should take their breaks around the middle of that four-hour window, it is up to them to determine exactly when to do so "[b]ased on the demands of their run on any given day, . . . focusing primarily on the daily down time during a run due to ride cancellations and/or ride no-shows." Dkt. No. 1-2, Ex. 1, Art. 6, Sec. 7. If a driver believes "the demands of their run will not permit him/her to take a rest period in or about the middle of a work period," then the driver "may contact the dispatcher to address the situation." *Id.* Foster's claim is that Transit "failed to authorize and/or permit" those 10-minute rest periods, and that drivers could not take breaks because they "were assigned too much work" to complete during their shifts. Dkt. No. 1, Ex. A ¶¶ 121-29. According to Transit, adjudicating this claim requires interpreting these CBA provisions, and others relating to driver seniority and the ability to bid on preferred routes.

This is also not well-taken. Transit focuses on the CBA's "demands of their run" phrase, but even assuming it is ambiguous, it has scant bearing on Foster's claim. That provision involves when drivers may take their breaks, not whether they may do so. Likewise, the other provisions cited by Transit address which routes drivers are assigned, or what to do when a driver feels he has too much work, none of which bears on the central issue of whether Foster was entitled to rest breaks. *See Burnside*, 491 F.3d at 1072 (ambiguity in CBA "wholly irrelevant" if it "does not bear on" the central issue in the case). Foster claims that he could not take breaks at all. The outcome might have been different if he had been penalized for taking breaks at the wrong time, but that is not what he alleges.

For the remaining claims in the complaint, Transit does not argue for preemption but suggests they should be litigated here based on supplemental jurisdiction. Dkt. 1 at 11; Dkt.

7

No. 16 at 14.  But in the absence of original subject matter jurisdiction, which does not exist in this case, they are properly declined from further consideration by the Court.  *See* 28 U.S.C. § 1367(c); *Cupp v. Straley*, No. 15-CV-01565-JD, 2015 WL 4735212, at *3 (N.D. Cal. Aug. 10, 2015), *aff'd*, No. 16-15329, 2016 WL 10592256 (9th Cir. Nov. 15, 2016).

## CONCLUSION

The case was removed improvidently and without jurisdiction, and is remanded to the California Superior Court for Alameda County.  28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

Dated: January 25, 2019

JAMES DONATO
United States District Judge